# United States Court of Appeals
## For the First Circuit

No. 05-1725

UNITED STATES OF AMERICA,

Appellant,

v.

COREY SMITH,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Morris E. Lasker,<sup>*</sup> Senior U.S. District Judge]

Before

Boudin, Chief Judge,

Stahl, Senior Circuit Judge,

and Howard, Circuit Judge.

Patrick M. Hamilton, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellant.

Jonathan Shapiro with whom Stern, Shapiro, Weissberg & Garin, LLP was on brief for appellee.

April 7, 2006

<sup>*</sup>Of the Southern District of New York, sitting by designation.

**BOUDIN, <u>Chief Judge</u>**.  Corey Smith pled guilty to six counts of crack distribution and one count of conspiring to sell crack.  Applying the sentencing guidelines, the district court calculated Smith's sentencing range to be 100-125 months of imprisonment, but then sentenced Smith to 46 months of imprisonment (followed by six years of supervised release).  The government now appeals, arguing that Smith's sentence is unreasonably low.

In October and November of 2003, Smith--who was twenty-one years old at the time--facilitated four sales and made three direct sales of crack cocaine to Adolfo Brito, an undercover police officer.  All of the transactions, save perhaps one, took place within 1,000 feet of either the George A. Lewis Middle School or the Little Scobie Playground.  Smith was arrested on April 15, 2004, and eventually pled guilty to six counts of crack distribution and one count of conspiring to sell crack.  21 U.S.C. § 841(a) (2000).

Soon after his arrest, Smith was released to an in-patient drug treatment program at Spectrum House and successfully completed the initial treatment program.  In January 2005, after his guilty plea, he was transferred to a "sober house" run by the South Middlesex Opportunity Council.  After a series of violations of the sober house's rules--including staying out without authorization--Smith's release was revoked by a magistrate judge on

February 8, 2005, and he was thereafter detained until April 19, 2005, when his sentence was imposed.

The pre-sentence report calculated Smith's total offense level as 25, based on the quantity of crack (14.25 grams), the proximity of his offenses to a school and playground, and Smith's acceptance of responsibility. Because of prior convictions for various offenses, including the possession of marijuana with the intent to distribute, Smith had a criminal history category of V (based on eleven criminal history points).[1]

The probation officer found no basis for a downward departure under the guidelines. This meant that Smith's guideline sentencing range was 100 to 125 months. However, the sentencing occurred after United States v. Booker, 125 S. Ct. 738 (2005), so the district court was not restricted to a guideline sentence. It appears that the probation officer recommended a below-guideline sentence of sixty months based on considerations such as Smith's limited role in the offenses, his rehabilitation from his drug habit, and the allegedly minor nature of his prior offenses.

After hearing argument from the government and defense counsel, and after an allocution by the defendant, the district

---

[1]Smith was convicted of these crimes embracing six separate incidents spanning the period May 16, 2000, to December 3, 2002. He served time in prison after violating the conditions of his probation stemming from his drug possession conviction, and it was soon after his release from that period of incarceration that he was arrested for the crime in question here.

-3-

judge (over the government's objection) sentenced Smith to 46 months in prison followed by six years of supervised release, and recommended drug treatment for Smith while in prison. In explaining the sentence, the district judge addressed Smith as follows:

> I think you're a man who has done wrong things, gotten in trouble, find yourself in a fix, but you're young and you may turn around and I'd like to see you turn around rather than get crushed. . . .
>
> Against you is the nature of the offense that you committed, an aggravated selling of controlled substance regularly in a location close to a school, and although I don't suppose you sat and thought about whether it's close to a school or not, I'm sure you knew there were a lot of little kids in that area, and that's a hell of a place to be selling cocaine, and the law makes it more of an offense, but in your favor is the fact that you were involved in the offense for a limited period of time and [d]o not appear to have been a leader. You appear to have committed the crime to support your drug habit.
>
> While on pretrial release you did participate in drug abuse treatment and, for the most part, you received positive reports, although I guess you had a couple of slips, didn't you? And during pretrial release, you did obtain employment.
>
> Bearing all these things in mind and the requirements of the statute that the sentence imposed be serious -- I mean, be sufficient to take into consideration the seriousness of the offense, the protection of society, your own needs to improve and to make sure that the sentence is sufficient but not excessive, and bearing in mind that the Probation Department concludes that in accordance with this statute, a sentence substantially below the

guidelines is appropriate. I'm imposing the same sentence on you as I have imposed on the two defendants in this case who have appeared before me already, although that sentence is somewhat below what the probation guideline recommends in your case.

In Booker, the Supreme Court held that mandatory guidelines based on judge-made findings violated the Sixth Amendment, but, after a severance analysis, ruled that the guidelines should be treated as "effectively advisory." 125 S. Ct. at 750-52, 757. The Court further stated that sentences would be reviewable for "reasonableness," and that this review would apply regardless of whether sentences fell within the advisory guidelines range. Id. at 765-66.

The sentencing court's discretion remains constrained by 18 U.S.C. § 3553(a) (2000), which requires courts to consider a number of factors in imposing sentences, United States v. Pho, 433 F.3d 53, 61-62 (1st Cir. 2006), including "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), "the need for the sentence imposed," id. § 3553(a)(2),[2] and "the need to avoid unwarranted

---

[2]In making this determination, courts must consider the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; "to protect the public from further crimes of the defendant"; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(2)(A)-(D).

sentence disparities among defendants with similar records who have been found guilty of similar conduct," id. § 3553(a)(6).

The statute also requires courts to consider the sentencing range established by the guidelines. 18 U.S.C. § 3553(a)(4); accord Booker, 125 S. Ct. at 764-65. In United States v. Jiménez-Beltre, --- F.3d ---, 2006 WL 562154 (1st. Cir. Mar. 9, 2006) (en banc), this court stated that the guidelines remained "an important consideration" because they represented the only "integration of the multiple factors" identified in the statute, often reflected past practice, and bore the imprimatur of the expert agency charged with developing them. Id. at *2-*3 (emphasis omitted).

For the same reasons, we said that a district court should normally begin with a guideline calculation, and that after considering departures, the district court should decide whether "other factors" (beyond the guidelines) warranted an ultimate sentence above or below the guideline range. Jiménez-Beltre, 2006 WL 562154, at *3. As for review for reasonableness, we stressed the need for "a plausible explanation and a defensible overall result." Id. at *4. The "within the range" sentence involved in Jiménez-Beltre was easily affirmed. Id. at *3-*5.

The present case is more difficult. The sentence is not a modest variance from the guideline range, but less than half the minimum of the range. "[T]he farther the judge's sentence departs

-6-

from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reasonableness of the sentence imposed." United States v. Dean, 414 F.3d 725, 729 (7th Cir. 2005) (Posner, J.). However, circumstances may make a major variance reasonable.

Here, the district court relied on six factors to distinguish this case: Smith's youth; his involvement in the offense "for a limited period of time"; the fact that Smith did not "appear to have been a leader"; the fact that Smith "appear[ed] to have committed the crime to support [his] drug habit"; Smith's participation in drug abuse treatment and his subsequent employment; and the probation officer's suggestion that a "sentence substantially below the guidelines is appropriate."[3]

The government first argues that the district court committed legal error because some of the factors relied upon--such as age, drug use, lack of a leadership role, and post-offense rehabilitation--are "either discouraged or prohibited bases for departure" under the sentencing guidelines and circuit precedent. Legal errors are reviewed de novo and are themselves a basis for

---

[3]The district judge also told Smith that he was "imposing the same sentence on you as I have imposed on the two defendants in this case who have appeared before me already." One of the defendants was sentenced to 46 months of imprisonment, while the other was sentenced to 57 months of imprisonment.

remand, <u>Pho</u>, 433 F.3d at 60-61, unless the error had no effect upon the sentence.

For the most part, the Commission's decision to discourage or exclude a factor seemingly rested either on a doubt whether the factor had much relevance to the statutory goals of sentencing or a concern that the factor was of a kind that tended to promote the inequality in sentencing that the guidelines aimed to reduce. U.S.S.G. § 5H1.1, intro. cmt. (2005); <u>cf.</u> <u>id.</u> § 5K2.0, cmt. (backg'd). But, as we explained in <u>Jiménez-Beltre</u>, the guidelines are generalizations; the benefit of advisory guidelines is the room allowed for finer tuning. 2006 WL 562154, at *3.

That a factor is discouraged or forbidden under the guidelines does not automatically make it irrelevant when a court is weighing the statutory factors apart from the guidelines. The guidelines--being advisory--are no longer decisive as to factors any more than as to results. About the best one can say for the government's argument is that reliance on a discounted or excluded factor may, like the extent of the variance, have some bearing on reasonableness.

The government also argues that the district court erred in relying on the pre-sentence recommendation of a sentence substantially below the guidelines range, contending that this factor is "irrelevant" under section 3553(a). However, nothing in the statute forbids taking the probation officer's recommendation

-8-

into account. A sentencing judge could reasonably consider the informed opinion of the officer in evaluating the section 3553(a) factors, see United States v. Robinson, 433 F.3d 31, 36 (1st Cir. 2005), although the weight accorded such an evaluation surely depends on the strength of the reasons given.

The government next argues that the district court erred in (allegedly) basing Smith's sentence on those of his co-defendants. The government says that this misconstrues section 3553(a)(6), which requires district courts to avoid creating "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The government argues that the "disparity" referenced in the statutory language refers only to variations from a national norm.

We agree that Congress' goal of equality primarily envisions a national norm; the guidelines were in some measure a response to disparities among sentences for like individuals in different parts of the country. United States v. Wogan, 938 F.2d 1446, 1449 (1st Cir. 1991), cert. denied, 502 U.S. 969 (1991). In any event, the district judge in this case was apparently stressing his own consistency rather than supplying an independent justification of the 46 month sentence.

Having rejected the government's legal-error arguments, we turn now to its claim that the sentence was unreasonably low. In doing so, we do not think that the district court made any clear

error as to underlying fact warranting a remand. Robinson, 433 F.3d at 38 (sentence may be vacated if "predicated on a clearly erroneous view of material facts").[4] The issue, rather, is one of reasonableness: the plausibility of both the explanation and the result. Jiménez-Beltre, 2006 WL 562154, at *4.

The first fact relied on by the district court--Smith's youth--is a discouraged factor, but one that has a conventional appeal; among the concerns are that the crime may be a youthful aberration and that a young man may have a greater chance for rehabilitation. The district judge did not rely upon aberration--Smith, after all, had participated in six crack transactions and had a substantial criminal history continuing over several years--but the judge did express a hope of rehabilitation.

Yet Smith's criminal career has progressed fairly steadily toward more serious crimes (from license plate theft and marijuana possession, for example, to crack distribution near a school and playground). He served time in prison after violating the conditions of his probation stemming from his marijuana possession conviction, and it was soon after his release from that

---

[4]The government says that the evidence did not support the district court's statements about drugs as a cause of Smith's crimes or his rehabilitation. A close reading indicates that the statements were quite qualified--that Smith "appear[ed]" to have engaged in his crimes in order to support a drug habit, and, in treatment, "received positive reports," though he "had a couple of slips." The former statement, so qualified, has some basis in the PSR; the latter is a matter of characterization.

period of incarceration that he was arrested for the crime in question here.

The district judge also relied upon Smith's involvement in the present offenses "for a limited period of time." But Smith already had a significant criminal history; his first conviction (not necessarily his first crime) occurred more than three years before his crack transactions, which means that he was engaged in offenses from the age of 18 through the age of 21. During this period, he accumulated nine criminal history points, so his present offenses appear a further extension of his criminal history.

Further, the court said that Smith did not "appear to have been a leader," and this is true even though Smith progressed in the six transactions from aiding others to making his own sales. But the guideline calculations already account for this fact. U.S.S.G. § 3B1.1 (2005). If there is some more specific aspect of his role that mitigates over and above the usual guideline sentence for an ordinary participant, which in principle could be true, it is not stated.

Finally, the district judge mentioned the potential contribution of drug addiction. The probation officer apparently said that the defendant "appear[ed] to have committed" the crimes to support a drug habit. At sentencing, the district judge essentially echoed the probation officer's qualified statement about the role of Smith's drug problems in his crimes. The

government argues that this finding was without basis, and the defendant does not point to any specific facts on the record that support such a conclusion.

In any case, we note that Smith, as soon as he had completed his first phase of rehabilitation, immediately began to break the rules of the sober house, which resulted in the termination of his release. Regardless of the extent to which drug dependence may have played a role in his crimes, this relapse into misbehavior almost as soon as controls lessened does not speak well for his prospects of future self-control, whatever the cause for the relapse may have been.

We are hard-put to see any basis for finding this sentence reasonable. This is equally true if one turns from the facts relied upon by the district judge to the general considerations provided by the statute. Both vantages are pertinent in assessing reasonableness, and other circuits that have reviewed sentences for reasonableness have been willing to look at the matter from either end of the telescope. See, e.g., United States v. Lazenby, --- F.3d ---, 2006 WL 569284, at *4-*5 (8th Cir. Mar. 10, 2006); United States v. Duhon, --- F.3d ---, 2006 WL 367017, at *3-*8 (5th Cir. Feb. 17, 2006); United States v. Moreland, 437 F.3d 424, 436-37 (4th Cir. 2006).

The first sentencing factor is "the nature and circumstances of the offense and the history and characteristics of

-12-

the defendant." 18 U.S.C. § 3553(a)(1). Here, the offense involved repeatedly selling crack near a school and playground, and the defendant, although young, has accumulated a significant criminal history. Even after some rehabilitation and while this case was pending, he was unable to conform to the rules of the sober house to which he was sent.

Three more factors, grouped together by the statute, are the seriousness of the offense, need for respect for law, and need for just punishment. 18 U.S.C. § 3553(a)(2)(A). Selling crack near facilities where children gather speaks directly to these factors. The offense, and the defendant's developing criminal career, is also pertinent, again in ways unhelpful to him, to two other statutory factors: the need "to afford adequate deterrence" and "to protect the public." Id. § 3553(a)(2)(B)-(C).

The statute also refers to the need "to provide the defendant with needed . . . medical care[] or other correctional treatment . . . ." 18 U.S.C. § 3553(a)(2)(D). If drug treatment is required by Smith, this can presumably be done whether the sentence is 46 months or a longer guideline sentence. The statute's language does not itself make drug addiction an extenuating circumstance, and in any event, as we have seen, there is no very clear evidence of a causal link between drug abuse and Smith's crimes in this case.

The next pertinent sentencing factor in the statute is the guideline range itself, 18 U.S.C. § 3553(a)(4)(A), which in turn is the principal means for complying with the last pertinent goal, namely, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Id. § 3553(a)(6). The factor in question--the guideline range--is obviously not one that supports the district court's non-guideline sentence, and, to the extent that the guidelines are given force, pushes in the other direction.

In a nutshell, the offense is quite serious and the defendant's record unpromising, and there are no developed findings to indicate that rehabilitation is a better prospect than usual. A sentence less than half the minimum range appears to us plainly unreasonable. Although we are unhappy to disagree with the respected and experienced district judge in this case, we cannot sustain the sentence on the findings and explanation before us.[5]

The sentence is <u>vacated</u> and the case <u>remanded</u> for resentencing consistent with this decision. Framing a new sentence after any proceedings deemed appropriate is, in the first instance, the responsibility of the district judge.

<u>It is so ordered</u>.

---

[5]<u>Compare</u> <u>United States</u> v. <u>Hampton</u>, --- F.3d ---, 2006 WL 724811, at *3-*4 (4th Cir. March 23, 2006); <u>Lazenby</u>, 2006 WL 569284 at *4-*5; <u>Duhon</u>, 2006 WL 367017 at *3-*8; <u>Moreland</u>, 437 F.3d at 436-37; <u>United States</u> v. <u>McMannus</u>, 436 F.3d 871, 875 (8th Cir. 2006).