# United States Court of Appeals
## For the First Circuit

No. 05-1352

UNITED STATES,

Appellee,

v.

DIONISIO ZAPETE-GARCIA, a/k/a Vetilio E. Fajardo,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Boudin, Chief Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

José Guillermo Gonzalez on brief for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney,
and H.S. Garcia, United States Attorney, on brief for appellee.

May 8, 2006

**STAHL**, **Senior Circuit Judge**.  In October 2004, Dionisio Zapete-Garcia (Zapete) disembarked from an airplane in Isla Verde, Puerto Rico.  The flight had originated in the Dominican Republic. On arrival, Zapete presented United States immigration officials with an American permanent resident card bearing his own photograph and the name Vetilio E. Fajardo.  Upon questioning, Zapete admitted that he had obtained the card fraudulently, paying approximately $1,500 for it.  Federal Immigration and Customs Enforcement records revealed that Zapete had been deported from the United States twice previously, once in 1985 and once in 1987.

That December, Zapete pleaded guilty to one count of knowingly using or attempting to use a forged, counterfeit, or altered immigration document in violation of 18 U.S.C. § 1546(a). His sentencing hearing took place on February 4, 2005 in the District Court for the District of Puerto Rico.  The district judge, following the recommendation of the Pre-Sentence Investigation Report (PSR), began his calculations under the federal Sentencing Guidelines[1] with a base offense level of 8.  He then added two levels because Zapete was an unlawful alien who had previously been deported from the United States (U.S.S.G. § 2L2.2(b)(1)) and subtracted two levels for acceptance of responsibility (§ 3E1.1), arriving at a total offense level of 8.

---

[1]The district court relied on the November 2004 version of the Guidelines.

-2-

Because Zapete had never before been convicted of any offense, the court determined his criminal history category to be I. The total offense level combined with the criminal history category yielded a recommended guidelines sentencing range of zero to six months. The district judge, however, after reminding the parties that United States v. Booker, 543 U.S. 220 (2005), had rendered the guidelines advisory rather than mandatory, sentenced Zapete to 48 months in prison, eight times the maximum guideline-recommended sentence.[2] As explanation for the sentence he chose, the judge stated:

> The Court imposes this sentence based on the following factors. As it appear[s] from the presentence report . . . this defendant has already been deported twice from the United States. He had been deported back in October of [19]85 and August of 1987. It also appears from the presentence report that he was arrested on November 14, 1991, in New York City, charged with criminal possession of controlled substance, narcotics, a Class A Felony, and with criminal possession of a weapon, which is a Class D Felony. And since 1992 a bench warrant [that] has been issued for his arrest remains outstanding. For those reasons the Court imposes the sentence that it has imposed.

Zapete now challenges his sentence.

We review sentences imposed after Booker for reasonableness. Booker, 543 U.S. at 261; United States v. Alli, __

_____

[2]The statutory maximum penalty for Zapete's offense was ten years of imprisonment. 18 U.S.C. § 1546(a).

-3-

F.3d __, 2006 WL 893620, at *4 (1st Cir. Apr. 7, 2006).[3]
Procedurally, under the advisory guidelines scheme set in place by
Booker, a sentencing court will ordinarily begin by calculating the
applicable guidelines range and then determine whether other
factors "warrant an ultimate sentence above or below the guideline
range." United States v. Jiménez-Beltre, 440 F.3d 514, 518-19 (1st
Cir. 2006) (en banc). The court must consider factors identified
by the parties, see id., and is also bound to consider the several
sentencing factors set out in 18 U.S.C. § 3553(a).[4] Alli, 2006 WL

---

[3]Zapete argues that we should review his sentence de novo
because he pleaded guilty before Booker was decided, even though he
was sentenced post-Booker. However, we have already made clear
that sentences imposed after Booker was handed down are reviewed
for reasonableness. It is possible to construe Zapete's brief as
arguing that Zapete was denied due process and fair warning because
the sentence he was given was "higher than any that might
realistically have been imagined at the time of the crime," United
States v. Lata, 415 F.3d 107, 112 (1st Cir. 2005), but our
disposition of the case on reasonableness grounds makes any
consideration of due process unnecessary. See id.

[4]These factors are:
(1) the nature and circumstances of the offense and the
history and characteristics of the defendant;
(2) the need for the sentence to reflect the seriousness of
the offense, to promote respect for the law, and to provide just
punishment; to afford adequate deterrence; to protect the public;
and to provide the defendant with needed educational or vocational
training or medical care;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established
by the Guidelines;
(5) any pertinent policy statement;
(6) the need to avoid unwarranted sentence disparities among
defendants with similar records who have been found guilty of
similar conduct; and
(7) the need to provide restitution to any victims of the
offense.

-4-

893620, at *4; United States v. Robinson, 433 F.3d 31, 35 (1st Cir. 2005). When we review the chosen sentence for reasonableness, we look for "a plausible explanation and a defensible overall result." United States v. Smith, __ F.3d __, 2006 WL 893622, at *3 (1st Cir. Apr. 7, 2006) (quoting Jiménez-Beltre, 440 F.3d at 519).

Here, the judge offered two reasons for imposing a sentence upon Zapete that was eight times the length of the maximum guideline-recommended sentence. First, he mentioned the fact that Zapete had previously been deported twice from the United States. Second, he indicated that Zapete's arrest in New York some years earlier, along with the accompanying outstanding bench warrant, was a factor calling for a longer sentence. We evaluate these two factors with an eye to "a reasoned explanation" and "a plausible outcome." Alli, 2006 WL 893620, at *5 (quoting Jiménez-Beltre, 440 F.3d at 519).

The first factor, Zapete's previous deportations from the United States, was already accounted for in the guideline calculation: the PSR recommended, and the judge adopted, a two-level increase applicable to a defendant who "is an unlawful alien who has been deported (voluntarily or involuntarily) on one or more occasions prior to the instant offense." U.S.S.G. § 2L2.2(b)(1). When a factor is already included in the calculation of the guidelines sentencing range, a judge who wishes to rely on that

_____

18 U.S.C. § 3553(a).

-5-

same factor to impose a sentence above or below the range must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the guidelines calculation. See Smith, 2006 WL 893622, at *5. The judge in this case provided no such explanation. We do note that the two-level guideline enhancement in § 2L2.2(b)(1) applies to any unlawful alien defendant who has previously been deported at least once; the guideline does not recommend a steeper enhancement for defendants who have been deported multiple times. It is not necessarily unreasonable for a judge to increase the sentence of a defendant who had previously been deported more than once, and indeed Zapete had been deported twice. However, although some amount of increase for multiple violations might be reasonable if supported by an explanation, here there was no explanation for an increase of such magnitude. In any event we cannot say that one additional prior deportation reasonably warrants an eightfold increase in punishment. Cf. Smith, 2006 WL 893622, at *6 (sentence less than half of minimum guideline suggestion plainly unreasonable where judge provided no sustainable explanation).

The second factor relied upon by the district judge to enhance the sentence, Zapete's arrest in New York City in 1991 and the accompanying outstanding bench warrant, is also unpersuasive to support the magnitude of the increase. To begin with, the guidelines contain a policy statement that allows sentencing courts

"to consider 'prior similar adult criminal conduct not resulting in a criminal conviction'" but prohibits them from basing an upward departure solely on a defendant's prior arrest record. Williams v. United States, 503 U.S. 193, 197 (1992) (quoting U.S.S.G. § 4A1.3(a)(3)). Although this policy statement is no longer binding, see Smith, 2006 WL 893622, at *3, one of the seven statutory factors a judge must consider in sentencing is "any pertinent policy statement issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). Therefore, while not controlling, the policy statement prohibiting reliance solely on arrest records must be duly considered by the district judge. There is no evidence that the judge in this case did so.

More generally, a mere arrest, especially a lone arrest, is not evidence that the person arrested actually committed any criminal conduct. This is because arrest "happens to the innocent as well as the guilty." Michelson v. United States, 335 U.S. 469, 482 (1948); cf. Cheek v. Bates, 615 F.2d 559, 563 (1st Cir. 1980) ("mere arrest" without conviction "clearly inadmissible to show lack of credibility"). The guideline policy statement recognizes this limitation on the value of an arrest as information about a defendant's criminal propensity, highlighting the important distinction between direct evidence of past criminal behavior and mere arrests that may or may not have been the result of wrongdoing. Although a series of past arrests might legitimately

suggest a pattern of unlawful behavior even in the absence of any convictions, Zapete was arrested only a single time, more than a decade ago.  Thus, we conclude that it was unreasonable for the district court to rely on Zapete's single prior arrest as justification for enhancing his sentence.

Finally, we emphasize that we do not reject the sentence imposed below solely because of the magnitude of its deviation from the guideline-recommended range.  Although "circumstances may make a major variance reasonable," Smith, 2006 WL 893622, at *3, no such circumstances are obvious from the record in this case and no adequate explanation for such a large variation has been provided.

The appellant's sentence is **vacated** and the matter is **remanded** for resentencing in accordance with this opinion.