# United States Court of Appeals
## For the First Circuit

No. 13-2551

UNITED STATES OF AMERICA,

Appellee,

v.

LUIS DANIEL ORTIZ-RODRÍGUEZ,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

---

Before

Howard, Lipez, and Barron,
Circuit Judges.

---

José R. Olmo-Rodríguez on brief for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, Chief,
Appellate Division, and Rosa Emilia Rodriguez-Velez, United
States Attorney, on brief for appellee.

---

June 10, 2015

---

**BARRON**, **Circuit Judge**.  The defendant, Luis D. Ortiz-Rodríguez, received a 48-month prison term after entering a guilty plea to one count of cocaine trafficking in violation of 21 U.S.C. § 841(a)(1).  Ortiz now challenges the procedural reasonableness of that sentence due to the District Court's upward variance from the applicable sentencing range under the Sentencing Guidelines with what Ortiz contends was insufficient justification.  For the reasons that follow, we vacate Ortiz's sentence and remand for re-sentencing.

## I.

At sentencing, the District Court reviewed the guidelines calculation set forth in the pre-sentence investigation report.  The report stated that the base offense level for an offense involving less than 25 grams of cocaine was 12.  See U.S.S.G. § 2D1.1(c)(14) (2013).  The report further stated that Ortiz also was subject to a two-point enhancement for the use of firearms, as well as a two-point deduction for acceptance of responsibility in consequence of his plea.  See id. § 2D1.1(b)(1); id. § 3E1.1(a).  Thus, the report set forth a guidelines calculation that produced a recommended sentencing range of 10 to 16 months.  The statutory maximum for the offense is 20 years.  See 21 U.S.C. § 841(b)(1)(C).

The plea agreement, filed on July 24, 2013, contained an alternate guidelines calculation. The plea agreement's calculation yielded a sentencing range of 27 to 33 months. The agreement then recommended a sentence of 33 months. That recommendation was not binding, however, as the plea agreement provided that Ortiz's sentence would be "left entirely to the sound discretion" of the District Court. See Fed. R. Crim. P. 11(c)(3)(B). And, in any event, the plea agreement's guidelines calculation was incorrect. The calculation included numerous sentencing enhancements that the record did not support.[1]

---

[1] The pre-sentence report diverged from the calculation in the plea agreement and explained that:

> The Plea Agreement contemplates several guideline enhancements which are not applicable in this case. For example, the enhancement for use of violence (USSG § 2D1.1(b)(2)) and for reckless endangerment during flight (USSG § 3C1.2) are not supported by the evidence on record. There is no evidence that the defendant used violence in the commission of the offense or that he attempted to flee, let alone that he recklessly created a substantial risk of death or serious bodily injury to another person during the flight. Furthermore, the plea agreement contemplates a two level enhancement under USSG § 2D1.1(b)(14)(E) [offense committed as part of a pattern of criminal conduct engaged in as a livelihood]. However, in order for said enhancement to apply, it is necessary that the defendant receives an aggravating role adjustment under USSG § 3B1.2. In this case, an enhancement under USSG § 3B1.2 is neither contemplated by the plea agreement nor justified by the evidence

The District Court followed neither the recommendation in the pre-sentence report nor the recommendation in the plea agreement. The District Court explained that "even though Mr. Ortiz did not plead guilty to a weapons offense, the Court cannot disregard the fact that he participated in an offense that involved firearms and that those firearms were fired during the offense."[2] In that regard, the District Court referenced the conduct of Ortiz's co-defendants, who had fired guns into the air from a different vehicle while Ortiz was driving nearby.

The District Court then proceeded to describe the evidence found in Ortiz's car at the time of arrest. According to that summation, there was a bullet on the floor of the driver's side of Ortiz's car. Ortiz also had a fanny pack around his leg that contained 18 rounds of .357-caliber ammunition and a sandwich bag containing a leafy green substance that field-tested positive for marijuana. A leafy green substance (that also field-tested positive for marijuana) was also found on Ortiz in his front pocket. In addition, there were two duffel bags in the trunk of the car, which contained clothing, marijuana, four rifle magazines, cocaine packaged for sale, a single drum magazine, a

_____

on the record.
[2] Although a firearm count had been included in the original indictment, Ortiz had entered a guilty plea on only one count of drug trafficking.

double drum magazine, and four pistol magazines containing ammunition.

> The District Court emphasized the firearms involved:

> Once again, we find ourselves in a case involving firearms in this District, involving a young man with firearms or ammunition, magazines, that sell pretty expensively on the streets, and the person who possesses them, like Mr. Ortiz, appears not to have the means to purchase those type of things. Everybody knows that gun crimes are pervasive throughout the island, and I have to consider deterrence as one of the 3553 factors, because it's important to consider preventing criminal behavior by the population at large and not just by the defendant being sentenced.

The District Court then found that "the sentence to which the parties agreed, as well as the guideline imprisonment range reflected in the pre-sentence report, do[es] not reflect the seriousness of the offense, does not promote respect for the law, does not protect the public from further crimes by Mr. Ortiz and does not address the issues of deterrence and punishment." At that point, the District Court imposed the 48-month sentence.

## II.

The government contends that Ortiz failed to raise his challenge to the procedural reasonableness of the sentence below and thus that we may review only for plain error. But the record shows that defense counsel had no opportunity to raise a formal objection to the sentence prior to the sentencing hearing, as it

- 5 -

was only at the sentencing hearing that the District Court varied upwards from the guidelines range described in the pre-sentence investigation report. Furthermore, defense counsel's remarks both before and after the imposition of the sentence, though cut short, raised the same basic challenge to the reasonableness of the sentence that Ortiz now makes on appeal. We thus review the sentence for abuse of discretion. United States v. King, 741 F.3d 305, 307-08 (1st Cir. 2014).

Ortiz argues that the "stated grounds for the imposition of a sentence that so markedly exceeded the recommended guidelines range were neither sufficiently particularized nor compelling to survive the review for reasonableness." He relies on United States v. Zapete-Garcia, where we found the district court had failed to justify a 48-month sentence that was eight times greater than the top of the guidelines range, but was well below the 10-year statutory maximum. 447 F.3d 57, 59 & n.2 (1st Cir. 2006). And Ortiz also relies on United States v. Ofray-Campos, where we overturned a sentence that was two-and-one-half times greater than the top of the recommended guidelines range, but at the statutory maximum, because it, too, had not been adequately explained. 534 F.3d 1, 42-43 (1st Cir. 2008).

Here, as noted, Ortiz's sentence was well below the statutory maximum but three times greater than the top of the

advisory guidelines range.  Under Zapete-Garcia and Ofray-Campos, therefore, the District Court was obliged to explain how Ortiz's situation was different from the ordinary situation covered by, and accounted for, in the guidelines calculation and thus why such a significant variance was justified.  See United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006) ("The sentence is not a modest variance from the guideline range," and "[t]he farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reasonableness of the sentence imposed." (omission in original) (internal quotation marks omitted)).  But the District Court failed to provide such an explanation.

The District Court did discuss the quantity of firearms involved and the firing of the guns by the co-defendants.  But Ortiz rightly relies on Ofray-Campos for the proposition that "[w]hen a factor is already included in the calculation of the guidelines sentencing range, a judge who wishes to rely on that same factor to impose a sentence above or below the range must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the guidelines calculation."  534 F.3d at 43 (quoting Zapete-Garcia, 447 F.3d at 60).  And the District Court's

description of the facts at the sentencing hearing does not explain why this case is so substantially outside the heartland of the guideline enhancement for the use of firearms that a variance of this magnitude is justified. See Ofray-Campos, 534 F.3d at 43 ("The court's reference to [Appellant's] possession of weapons as a triggerman lacks compelling force, in part because firearm possession had already been considered, and accounted for, in the two-level enhancement applied in the calculation of Appellant's adjusted offense level" under U.S.S.G. § 2D1.1(b)(1)).

Rather than offering any such explanation, if one were possible on these facts, the District Court stated that "[o]nce again, we find ourselves in a case involving firearms in this District." The District Court also stated that "even though Mr. Ortiz did not plead guilty to a weapons offense, the Court cannot disregard the fact that he participated in an offense that involved firearms and that those firearms were fired during the offense." But the presence and use of firearms was accounted for in the two-point enhancement for firearms the judge included in the guidelines calculation, and so the reference to the mere presence or use of the firearms cannot justify such a significant variance. See Ofray-Campos, 534 F.3d at 43 ("[T]hese factors [mentioned by the District Court] were not so distinct from the firearm possession that was incorporated into the guidelines calculation as to justify

a variance of such magnitude."); Zapete-Garcia, 447 F.3d at 60 ("[T]he two-level guideline enhancement . . . applies to any unlawful alien defendant who has previously been deported at least once . . . . [A]lthough some amount of increase for multiple violations might be reasonable if supported by an explanation, here there was no explanation for an increase of such magnitude. In any event we cannot say that one additional prior deportation reasonably warrants an eightfold increase in punishment.").

In further explaining the sentence, the District Court did reference the pervasiveness of gun crime in Puerto Rico, the need for deterrence, the need to adequately reflect the seriousness of the offense, and the need to promote respect for the law and protect the public from further crimes of the defendant. Geographic considerations can be relevant at sentencing, as "the incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence." United States v. Flores-Machicote, 706 F.3d 16, 23 (1st Cir. 2013); see also United States v. Rivera-González, 776 F.3d 45, 50-51 (1st Cir. 2015) (finding "the high incidence of violent crime in Puerto Rico" to be an appropriate consideration at sentencing). Even still, "the section 3553(a) factors must be assessed in case-specific terms," Flores-Machicote, 706 F.3d at 23, and a sentencing court's "appraisal of community-based

- 9 -

considerations does not relieve its obligation to ground its sentencing determination in individual factors related to the offender and the offense," Rivera-González, 776 F.3d at 50.

Here, the District Court's reference to the section 3553 factors and contextualizing comments about gun crime in Puerto Rico do not explain why an upward variance of this magnitude was warranted. Given the nature of this drug offense, and the fact that the District Court did not explain how the enhancing conduct involving firearms falls outside the heartland of the guideline enhancement that had already been imposed, the District Court's explanation of the defendant's conduct was not sufficiently compelling to explain this upward variance. See Smith, 445 F.3d at 6 ("We are hard-put to see any basis for finding this sentence reasonable. This is equally true if one turns from the facts relied upon by the district judge to the general considerations provided by the statute."). "Although 'circumstances may make a major variance reasonable,' no such circumstances are obvious from the record in this case and no adequate explanation for such a large variation has been provided." Zapete-Garcia, 447 F.3d at 61 (quoting Smith, 445 F.3d at 3).

## III.

Because the sentencing rationale fails to adequately explain the basis for this large variance from the guidelines

- 10 -

range, we order the sentence to be <u>vacated</u>, and we <u>remand</u> for re-sentencing.