# United States Court of Appeals
## For the First Circuit

No. 19-1467

UNITED STATES OF AMERICA,

Appellee,

v.

JULIAN G. RIVERA-BERRÍOS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Thompson, Selya, and Barron,
Circuit Judges.

Rafael F. Castro Lang on brief for appellant.
W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Antonio L. Perez-Alonso, Assistant United States Attorney, on brief for appellee.

August 3, 2020

**SELYA**, **Circuit Judge**.  After defendant-appellant Julian G. Rivera-Berríos entered a guilty plea to a single count charging him with illegal possession of a machine gun, see 18 U.S.C. § 922(o)(1), the district court sentenced him to a forty-two-month term of immurement — a year above the top of the guideline sentencing range.  The appellant challenges this upwardly variant sentence, asserting that the sentencing court erred by (among other things) varying upward from the range without adequately distinguishing his case from the mine-run of machine gun possession cases.  Because the record reveals nothing that distinguishes this case from a garden-variety machine gun possession case within the contemplation of the sentencing guidelines, we vacate the appellant's sentence and remand for resentencing within the guideline sentencing range.

## I. BACKGROUND

We briefly rehearse the relevant facts and travel of the case.  When — as in this instance — a sentencing appeal follows a guilty plea, we glean the facts from the plea colloquy, the presentence investigation report (PSI Report), and the transcript of the disposition hearing.  See United States v. Miranda-Díaz, 942 F.3d 33, 37 (1st Cir. 2019).

In July of 2018, law enforcement officers were surveilling a restaurant in Bayamón, Puerto Rico, hoping to locate a federal fugitive.  During this surveillance, the officers

- 2 -

observed the appellant, then age twenty-eight, interacting with the fugitive. When some of the officers entered the restaurant to effectuate the fugitive's arrest, other officers (charged with perimeter security) saw the appellant toss a firearm and a detached magazine out of a window. The firearm proved to be a Glock machine pistol equipped with a device that enabled it to fire automatically and loaded with a high-capacity magazine containing eighteen rounds. The detached magazine carried a like number of rounds.

The appellant was arrested, and a federal grand jury sitting in the District of Puerto Rico indicted him within a matter of days. The indictment contained two counts, one charging the appellant with being a felon in possession of a firearm and ammunition, see 18 U.S.C. § 922(g)(1), and the second charging him with illegally possessing a machine gun, see id. § 922(o)(1). The appellant initially maintained his innocence as to both charges.

In January of 2019, the appellant reversed his field and entered a straight guilty plea to the charge of illegal possession of a machine gun.[1] Thereafter, the probation office prepared and submitted the PSI Report. The Report noted that the appellant had been living with his girlfriend and their two young children, that he had worked at various jobs, that he had no prior criminal

---

[1] Subsequent to the return of the indictment, the government realized that the appellant had never been convicted of any previous crime. Consequently, it dropped the felon-in-possession charge.

- 3 -

record, and that he claimed to have purchased the firearm for self-protection. It also noted his frequent use of marijuana. After reviewing the details of the offense and finding no aggravating circumstances warranting a variance — for example, there was no evidence that the appellant had employed the gun in any criminal venture or (for that matter) had ever used it — the PSI Report calculated the guideline sentencing range as twenty-four to thirty months.[2] Neither the government nor the appellant challenged this calculation, and both sides recommended that the court impose a sentence at the low end of the range.

Before imposing sentence, the district court mentioned a few biographical facts pertaining to the appellant. Shifting gears, the court spoke at some length about the incidence of machine guns and related violence in Puerto Rico. The court then sentenced the appellant to an upwardly variant term of immurement: forty-two months. This timely appeal followed.

---

[2] The underlying computations are straightforward. With exceptions not relevant here, the statute of conviction makes it "unlawful for any person to transfer or possess a machinegun." 18 U.S.C. § 922(o)(1). Building on this proscription, the guidelines assign a base offense level of twenty to a prohibited person in illegal possession of a machine gun. See USSG §2K2.1(a)(4)(B). Here, the base offense level was reduced by three levels for acceptance of responsibility. See id. §3E1.1. Because the appellant was a first-time offender, he registered a criminal history score of zero and fell into criminal history category I. His total offense level of seventeen, paired with his criminal history category, yielded the guideline sentencing range.

- 4 -

## II. ANALYSIS

We review preserved claims of sentencing error for abuse of discretion. See Gall v. United States, 552 U.S. 38, 46 (2007); United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). Under this approach, we assay the sentencing court's factual findings for clear error and evaluate its legal conclusions de novo. See United States v. Díaz-Lugo, 963 F.3d 145, 151 (1st Cir. 2020); United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013). Typically, we first examine claims of procedural error and inquire into the substantive reasonableness of a sentence only after it has passed procedural muster. See Miranda-Díaz, 942 F.3d at 39; Martin, 520 F.3d at 92.

Here, the government contends that we should review the appellant's procedural claims for plain error because (in its view) his objections below lacked sufficient specificity. We reject this contention. To preserve a claim of procedural sentencing error for appellate review, a defendant's objection need not be framed with exquisite precision. See United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017); cf. Bryant v. Consol. Rail Corp., 672 F.2d 217, 220 (1st Cir. 1982) (explaining that counsel did not have to "cite to the specific rule or use any particular form of words" to preserve evidentiary objection). It is enough if the objection is "sufficiently specific to call the district

court's attention to the asserted error." Soto-Soto, 855 F.3d at 448 n.1.

In the court below, the appellant's counsel made clear that he believed that the sentence was "excessive" and that the court had not articulated any cognizable grounds that would support an upward variance. We think those statements were adequate to preserve the appellant's principal claim of procedural error: that the district court impermissibly grounded its upward variance on an improper factor (that is, a factor already fully accounted for by the applicable guidelines). Consequently, we review this claim for abuse of discretion.

Having clarified the standard of review, we proceed to put this claim of procedural error into perspective. To do so, we first revisit the basic architecture of the advisory sentencing guidelines. Our starting point is the Sentencing Reform Act of 1984, Pub. L. No. 98-473, tit. II, ch. II, 98 Stat. 1987, in which Congress crafted a neoteric framework for imposing sentences in federal criminal cases. As relevant here, the statutory scheme lays out a myriad of factors that a sentencing court "shall consider" and requires that the court "state . . . the reasons" for its choice of a particular sentence. 18 U.S.C. § 3553(a), (c).

Although articulating this statement of reasons does not require a sentencing court to offer an explanation of its

sentencing decision that is "precise to the point of pedantry," United States v. Sepúlveda-Hernández, 817 F.3d 30, 33 (1st Cir. 2016) (quoting United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir. 2006)), the explanation must elucidate the primary factors driving the imposed sentence, see United States v. Rivera-Morales, 961 F.3d 1, 18 (1st Cir. 2020). This requirement serves as an important check on the sentencing court. As we have cautioned, just because "a sentencing court possesses the raw power to deviate from the guidelines does not mean that it can (or should) do so casually." Martin, 520 F.3d at 91. The extent of the explanation required will vary in direct proportion to how far — if at all — the sentencing court strays from the guideline sentencing range. See United States v. Montero-Montero, 817 F.3d 35, 37 (1st Cir. 2016) (observing that burden to provide explanation "grows heavier" when sentence is outside guideline sentencing range). It follows that when a court imposes an upwardly variant sentence, it must provide a correspondingly cogent explanation. See United States v. Fields, 858 F.3d 24, 31 (1st Cir. 2017); Montero-Montero, 817 F.3d at 37.

Before announcing its sentence, the district court described the factual circumstances surrounding the offense of conviction, embraced the guideline calculations limned in the PSI Report, and offered a two-sentence biography of the appellant. It then dwelled at some length on the pervasiveness of violent crime,

murder, and machine guns in Puerto Rico. The court made pellucid that the driving force behind the upward variance — a full year over the top of the guideline sentencing range — was the nature of the firearm that the appellant possessed: a machine gun.

The appellant assigns error, arguing that the nature of the firearm, without more, was insufficient to warrant the upward variance. In his view, the guideline sentencing range already fully accounted for the nature of the firearm, and the court never pointed out any way in which his offense conduct differed from the mine-run of ordinary machine gun possession cases. We turn directly to this argument.

The guideline provision underpinning the appellant's base offense level is USSG §2K2.1(a)(4)(B). In pertinent part, this provision directs a base offense level of twenty if the "offense involved" a "firearm that is described in 26 U.S.C. § 5845(a)" and the defendant was a "prohibited person" at the time of the offense. In turn, 26 U.S.C. § 5845(a) includes "machinegun" in its definition of "firearm," and section 5845(b) defines a machine gun as "any weapon which shoots . . . automatically more than one shot, without manual reloading, by a single function of the trigger."[3] The guideline sentencing range was derived largely

---

[3] The appellant does not dispute either that his firearm qualified as a machine gun or that, as a marijuana user, he was a prohibited person, see 18 U.S.C. § 922(g)(3); USSG §2K2.1, cmt. n.3.

from this guideline provision, with routine adjustments.  See supra note 2.  In varying upward from this range, the sentencing court appears to have relied on nothing beyond the mere fact that the offense of conviction involved a machine gun.  The court did not identify any aggravating circumstance related to the appellant — a first-time offender.  Nor did it identify any aggravating circumstance related to the offense of conviction — a non-violent and victimless crime.  And, finally, our independent review of the record discloses no aggravating circumstances.

By the same token, the government — in its presentation at sentencing — identified no aggravating circumstances.  Indeed, by recommending the imposition of a sentence at the low end of the guideline sentencing range, the government implicitly conceded the absence of any such exacerbation.

In its appellate brief, the government does mention, albeit in passing, two potentially aggravating circumstances. First, it alludes to the number of rounds of ammunition found in the appellant's possession.  In this instance, though, the amount of ammunition was entirely consistent with simple possession of a machine gun.  There was no large cache of ammunition.

Second, the government says that the appellant committed the offense of conviction "while he was seen with a federal fugitive and his co-defendant . . . , who [later] pleaded guilty to being a convicted felon in possession of two pistol magazines."

The appellant told the probation officer, without contradiction, that he was at the restaurant with "friends" and that he knew his codefendant "from school gatherings." The record contains nothing to show that the appellant knew the fugitive. Nor does it contain anything to show that the appellant knew of his friends' criminal ties and, in any event, he was free to socialize with whomever he pleased. In the absence of some valid restriction on the appellant's freedom of association (say, a probation condition) or some indication of a joint venture, the company that the appellant kept, without more, would not support an upward variance.

As far as we can tell, the sole factor upon which the sentencing court relied as a basis for the upward variance was the nature of the firearm involved in the offense of conviction — and the court did not explain why this factor, which was already fully accounted for by the sentencing guidelines, was entitled to extra weight. Instead, the court's explanation of its sentence focused almost exclusively on the "highly dangerous and unusual" nature of machine guns in general. It noted the efficient lethality of such weapons, stating that "[a] modern machine gun can fire more than one thousand round[s] a[] minute allowing a shooter to kill dozens of people within a matter of seconds"; and it also noted the inherently illegal nature of machine guns, stating that "machine guns largely exist on the black market." These concerns are universal in their application, and we have no reason to believe

that they were not factored into the mix when the Sentencing Commission set the base offense level for the offense of conviction.

It is settled beyond hope of contradiction "that 'when a sentencing court relies on a factor already accounted for by the sentencing guidelines to impose a variant sentence, [it] must indicate what makes that factor worthy of extra weight.'" Díaz-Lugo, 963 F.3d at 155 (alteration in original) (quoting Fields, 858 F.3d at 32); see United States v. Zapete-Garcia, 447 F.3d 57, 60 (1st Cir. 2006). The factor relied on by the district court — that the offense involved a machine gun — was already fully accounted for in the guideline calculus. And the record is devoid of any basis for giving that factor extra weight here. We conclude, therefore, that the appellant's possession of a machine gun, unaccompanied by any hint of an explanation as to how his crime differed from the mine-run of machine gun possession cases within the contemplation of the sentencing guidelines, was insufficient by itself to support the upward variance.

To be sure, in explicating the sentence, the district court remarked "that violent crimes and murder are occurring at all hours of the day in Puerto Rico, in any place on the island, even on congested public highways, in shopping centers, public basketball courts, and at cultural events." But even though such community characteristics may be relevant at sentencing, see

- 11 -

United States v. Ortiz-Rodríguez, 789 F.3d 15, 19 (1st Cir. 2015), "the section 3553(a) factors must be assessed in case-specific terms." Flores-Machicote, 706 F.3d at 23. In other words, a "court's appraisal of community-based considerations does not relieve its obligation to ground its sentencing determination in individual factors related to the offender and the offense." United States v. Rivera-González, 776 F.3d 45, 50 (1st Cir. 2015). It is that case-specific nexus that is totally lacking in this case. See United States v. Ofray-Campos, 534 F.3d 1, 44 (1st Cir. 2008) (concluding that "generic reference to 'violence' . . . did not justify" upward variance imposed).

The government's appellate brief does not fill this void. Attempting to justify the upward variance, it argues that we should give decretory significance to the sentencing court's statement that it considered all of the section 3553(a) factors. But the mere fact that the court considered all of the relevant factors cannot justify an upward variance when those factors, whether taken singly or in combination, do not form a permissible basis for an upward variance. See Flores-Machicote, 706 F.3d at 21.

So, too, the district court referenced "the seriousness of the offense," the need to "promote[] respect for the law" and "protect[] the public from further crimes by [the appellant]," and the importance of "deterrence and punishment." These concerns,

too, are generic:  they apply to any defendant in any machine gun possession case.  Unmoored from any individual characteristics of either the offender or the offense of conviction — and the district court constructed no such mooring — they cannot serve as building blocks for an upward variance.  See Flores-Machicote, 706 F.3d at 21 ("When a court varies from the [guideline sentencing range], its reasons for doing so 'should typically be rooted either in the nature and circumstances of the offense or the characteristics of the offender.'" (quoting Martin, 520 F.3d at 91)).

We summarize succinctly.  The sentencing guidelines are meant to cover the mine-run of particular crimes, see Spears v. United States, 555 U.S. 261, 264 (2009) (per curiam); see also USSG ch. 1, pt. A (1)(4)(b), thus ensuring a modicum of uniformity in sentencing.  Although the sentencing guidelines are advisory, see United States v. Booker, 543 U.S. 220, 245 (2005), and a district court has the authority to vary upward from a properly calculated guideline sentencing range, it may exercise that authority only if some special characteristic attributable either to the offender or to the offense of conviction serves to remove a given case from the mine-run, see Ortiz-Rodríguez, 789 F.3d at 19.  Where, as here, the sentencing court has not identified any such characteristic and the record reveals none, an upwardly variant sentence cannot endure.

To say more would be to paint the lily.  Given that the sentencing guidelines fully accounted for the nature of the firearm involved in the offense of conviction, the sentencing court abused its discretion in relying upon that factor to fashion an upwardly variant sentence.  See id. at 18-19; Ofray-Campos, 534 F.3d at 43. And because the record reveals no circumstance that could justify an upwardly variant sentence in this case, we vacate the challenged sentence and remand for resentencing within the guideline sentencing range.

## III. CONCLUSION

We need go no further and — in particular — we need not resolve the appellant's other challenges to his upwardly variant sentence.  Based on the reasoning elucidated above, we vacate the appellant's sentence and remand to the district court for resentencing consistent with this opinion.


**Vacated and remanded.**   **Judgment to issue forthwith.**