# United States Court of Appeals
## For the First Circuit

No. 14-1101

UNITED STATES OF AMERICA,

Appellee,

v.

HÉCTOR CORTÉS-MEDINA,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]


Before

Lynch, Selya and Lipez,
Circuit Judges.


Heather Clark, with whom Law Office of Heather Clark was on brief, for appellant.
Francisco A. Besosa-Martínez, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.


May 12, 2016

**SELYA, Circuit Judge.** In this sentencing appeal, defendant-appellant Héctor Cortés-Medina insists that his 168-month sentence is both procedurally flawed and substantively unreasonable. After careful consideration, we affirm the sentence.[1]

This appeal has its roots in an indictment returned by a federal grand jury sitting in the District of Puerto Rico. The indictment alleged that the defendant served as an "enforcer" for a drug-trafficking ring and charged him as a participant in a conspiracy to possess with intent to distribute controlled substances within 1,000 feet of a protected location. See 21 U.S.C. §§ 841(a)(1), 846, 860.

In due course, the defendant entered into a non-binding plea agreement (the Agreement) with the government. The Agreement provided that, in exchange for his guilty plea to the conspiracy charge and to a related forfeiture allegation, the government would recommend a 121-month prison term; provided, however, that the defendant's criminal history category (CHC) was IV or lower. The district court accepted the plea, and the probation office prepared a presentence investigation report (PSI Report). Neither side objected to anything contained in the PSI Report, which (among

---

[1] The panel issued an opinion in this case on January 6, 2016, but that opinion was subsequently withdrawn. This opinion replaces the withdrawn opinion.

- 2 -

other things) recommended a series of guideline calculations culminating in a total offense level of 30, a CHC of IV, and a guideline sentencing range (GSR) of 135 to 168 months.

At the disposition hearing, the government recommended the agreed 121-month sentence, even though that sentence was below the nadir of the GSR. The district court heard statements from defense counsel and the defendant himself, and the court acknowledged the parties' joint sentencing recommendation. The court then engaged in a dissection of the defendant's criminal history.

To begin, the court examined the four convictions on which the defendant's CHC was premised. It then catalogued several arrests that had terminated either in acquittals or in dismissals. These included two charges for first-degree murder, two charges relating to destruction of evidence, and an assortment of charges for drug and firearm violations.[2] Noting that none of these charges had resulted in any punishment, the district court expressed frustration. The court said: "This is what I just don't understand, how these things are happening." It then added, cryptically, that "lightning doesn't strike twice in the same place."

_____

[2] The record reflects that the probation office had sought further information about each of these charges, but none was forthcoming.

- 3 -

The district court proceeded, without objection, to ratify and adopt the guideline calculations limned in the PSI Report. It stressed that the defendant was an enforcer in the drug-trafficking organization, adding "[w]e know what that means." In the end, the court sentenced the defendant to a term of immurement at the apex of, but within, the GSR: 168 months.

This timely appeal ensued. Although the Agreement contains a waiver-of-appeal provision, that provision, by its terms, is operative only if the court sentences the defendant in accordance with the Agreement's "terms, conditions and recommendations." Because the sentence imposed by the district court exceeded the sentence recommended in the Agreement, the waiver-of-appeal provision is a dead letter. See, e.g., United States v. Fernández-Cabrera, 625 F.3d 48, 51 (1st Cir. 2010).

Overall, "[a]ppellate review of federal criminal sentences is characterized by a frank recognition of the substantial discretion vested in a sentencing court." United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013). The "process is bifurcated: we first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable." United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011). Generally, both aspects of this review are for abuse of discretion. See Gall v. United States, 552 U.S. 38, 46 (2007); United States v. Martin, 520 F.3d 87, 92 (1st Cir.

- 4 -

2008).  When assessing the procedural reasonableness of a sentence, however, appellate review is more nuanced: we afford de novo consideration to the sentencing court's interpretation and application of the sentencing guidelines and assay the court's factfinding for clear error.  See Flores-Machicote, 706 F.3d at 20.

These standards of review are altered when an objection is not preserved in the court below.  In that event, review is for plain error.  See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).  Plain error review is not appellant-friendly.  It "entails four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  Id.

Against this backdrop, we turn to the defendant's claims of error: three procedural objections and a plaint of substantive unreasonableness.  We address these matters sequentially.

The defendant first argues that the district court erred by taking into account several dismissed or acquitted charges because the facts underlying those charges were not proven by a preponderance of the evidence.  He says that he preserved this argument by means of a statement contained in the "Background of the Defendant" section of his sentencing memorandum:

As evidence showed in the court files, that

> were examined, many of the indictments got dismissed because of lack of proof related to the supposed direct participation of the defendant and in others there was no proof at all.
>
> During the investigations as is shown as well in the Pre-Sentence Report the defendant has been accused of many different illegal acts as, for which many of these accusation [sic] were dismissed because of insufficient evidence.

However, no mention of the dismissed or acquitted charges was made in the "Application of Law and Arguments" section of the defendant's sentencing memorandum.

At the outset of the disposition hearing, the district court confirmed with defense counsel that the defendant had no objections to the PSI Report. During that hearing, defense counsel did not mention the dismissed or acquitted charges at all.

Generally, a party has 14 days after receipt of a presentence report within which to object in writing to, inter alia, "material information" contained in that report. Fed. R. Crim. P. 32(f)(1). A failure to object constitutes a waiver of any objection to such information. See United States v. Serrano-Mercado, 784 F.3d 838, 846, 847 (1st Cir. 2015); United States v. Turbides-Leonardo, 468 F.3d 34, 37 (1st Cir. 2006). Such a waiver occurred here.

Nor did the passing reference to the charges in the background section of the sentencing memorandum cure this

omission. That reference, particularly when not followed up by some corresponding reference in the argument section of the memorandum, did nothing to call to the sentencing court's attention that the defendant objected to any consideration of those parts of his arrest record that had not ripened into convictions. We conclude, therefore, that the defendant's argument is unpreserved and engenders plain error review.[3]

We turn to that review. The defendant bases his claim of error on the Supreme Court's opinion in United States v. Watts, 519 U.S. 148, 157 (1997) (per curiam). In that case, the Court concluded that, when imposing an offense-level enhancement, a sentencing court may consider acquitted conduct only if that conduct is proven by a preponderance of the evidence.[4] See id. at 153, 157.

Here, however, the sentencing court did not use dismissed or acquitted conduct to construct an offense-level enhancement. Instead, the court referred to the defendant's

---

[3] While our dissenting brother cavalierly proclaims that the argument made on appeal was "implicit in [the defendant's] contentions" at sentencing, post at 19, a finding to that effect would render normal principles of waiver meaningless.

[4] The two Seventh Circuit cases relied on by the defendant — United States v. Short, 4 F.3d 475 (7th Cir. 1993) and United States v. Ruffin, 997 F.2d 343 (7th Cir. 1993) — add nothing to the defendant's argument. Though predating Watts, these cases are in the same general posture and adumbrate the holding in Watts. See Short, 4 F.3d at 479; Ruffin, 997 F.2d at 345.

prolific arrest record, which was laid out in the PSI Report and not contested by the defendant, solely for the purpose of determining at what point within the GSR the defendant's sentence should be set.

Admittedly, it is not unreasonable to read Watts as an indication that the Supreme Court might well hold that a sentencing court may not accord any significance to a record of multiple arrests and charges without convictions unless there is adequate proof of the conduct upon which the arrests or charges were predicated. Nevertheless, our own precedent contains dicta, repeated several times, positing that a series of arrests "might legitimately suggest a pattern of unlawful behavior even in the absence of any convictions." United States v. Lozada-Aponte, 689 F.3d 791, 792 (1st Cir. 2012) (quoting United States v. Zapete-Garcia, 447 F.3d 57, 61 (1st Cir. 2006) (internal quotation marks omitted)); accord United States v. Ocasio-Cancel, 727 F.3d 85, 91-92 (1st Cir. 2013). Today, we caution district courts against placing weight on such speculation. But in the absence of such a prior warning, we cannot see how the sentencing court in this case plainly erred.

The defendant's next claim of error insists that the district court abused its discretion by not adequately considering the factors set forth in 18 U.S.C. § 3553(a). Our review of this claim is for abuse of discretion. See Gall, 552 U.S. at 51.

The defendant's claim centers on his assertion that the district court failed to consider not only that he had already served time for a matter incident to the offense of conviction but also that he had been rehabilitated. But these potentially mitigating factors were before the district court at sentencing; indeed, they were vigorously pressed by defense counsel. There is not the slightest reason to think that the district court overlooked them.[5]

No more is needed to defeat this claim of error. Even though a sentencing court is charged with a duty to "consider all relevant section 3553(a) factors, it need not do so mechanically." Clogston, 662 F.3d at 592 (internal quotation marks omitted). While the court below did not squarely address the two factors cited by the defendant, we have warned against "read[ing] too much into a district court's failure to respond explicitly to particular sentencing arguments." Id. This court has not required sentencing courts to walk, line by line, through the section 3553(a) factors. See United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006) (explaining that a sentencing court need not

---

[5] This is especially so because the sentence imposed was within the GSR. As the Supreme Court has explained, the guideline range itself bears a direct relation to the compendium of considerations listed in section 3553(a) and, thus, a within-the-range sentence "likely reflects the section 3553(a) factors." Rita v. United States, 551 U.S. 338, 355 (2007).

"address [the section 3553(a)] factors, one by one, in some sort of rote incantation when explicating its sentencing decision"). We have no occasion to impose such a requirement today. Thus, we discern no abuse of discretion in the sentencing court's failure to acknowledge explicitly that it had mulled the defendant's arguments.

The defendant's last procedural claim implicates 18 U.S.C. § 3553(c). This statute provides in pertinent part that the court "at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence" and, if the GSR spans more than 24 months, shall also state "the reason for imposing a sentence at a particular point within the range." 18 U.S.C. § 3553(c). The defendant says that the sentencing court did not adequately comply with these strictures and that, therefore, his sentence must be vacated.

The defendant's premise is sound: the sentencing court's explanation of its reason for choosing a top-of-the-range sentence of 168 months is recondite at best. But the conclusion that the defendant seeks to draw from this premise is unfounded. The defendant did not raise this objection below, and we have held that a district court's failure to provide an adequate explanation of a sentence, without more, is not sufficient to constitute plain error. See United States v. Medina-Villegas, 700 F.3d 580, 583 (1st Cir. 2012).

Here, there is no "more": the district court's rationale is readily apparent from the sentencing transcript. The court made no bones about its belief that the defendant's criminal history score underrepresented his culpability because of his pattern of arrests and the persistent lack of follow-up with respect to the charges that were initially preferred against him. It could well have believed that such items, even absent facts about the underlying conduct, spoke directly to the character of the individual, the risk of recidivism, and the need to protect the public from future crimes. See United States v. Rivera Calderón, 578 F.3d 78, 104-05 (1st Cir. 2009).

Transparency at sentencing is important, and we do not readily condone a district court's failure to comply with the obligations imposed by section 3553(c). But neither do we condone a defendant's failure to object in a seasonable manner and call such an oversight to the sentencing court's attention in time to correct it at the disposition hearing. The failure to voice a contemporaneous objection constrains our review to plain error, and we find no plain error here. There is simply no reason to believe that if the district court had effected a more literal compliance with section 3553(c), it would have handed down a milder sentence. See Medina-Villegas, 700 F.3d at 584; United States v. Mangual-Garcia, 505 F.3d 1, 16 (1st Cir. 2007); see also Turbides-Leonardo, 468 F.3d at 39 (explaining that an appellant hoping to

- 11 -

prevail on plain error review must show "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different" (internal quotation marks and alterations omitted)).

The defendant's final claim of error embodies a challenge, raised for the first time on appeal, to the substantive reasonableness of his sentence. We recently have explained that, in such circumstances, the appropriate standard of appellate review is uncertain. See United States v. Vargas-García, 794 F.3d 162, 167 (1st Cir. 2015); United States v. Ruiz-Huertas, 792 F.3d 223, 228 (1st Cir.), cert. denied, 136 S. Ct. 258 (2015). We need not resolve that uncertainty today: even assuming, favorably to the defendant, that his claim of substantive unreasonableness is reviewable for abuse of discretion, it nonetheless fails.

We start with first principles. When evaluating the substantive reasonableness of a sentence under the abuse of discretion rubric, an inquiring court must take into account the totality of the circumstances. See Martin, 520 F.3d at 92. A principal goal of sentencing is to fashion a sentence that is "sufficient, but not greater than necessary." United States v. Carrasco-de-Jesús, 589 F.3d 22, 29 (1st Cir. 2009) (quoting 18 U.S.C. § 3553(a)). In determining whether a sentencing court has achieved this goal, we assess the plausibility of the sentencing court's rationale and the appropriateness of the sentence itself.

- 12 -

See id. at 30.

Challenging a sentence as substantively unreasonable is a heavy lift. That lift grows even heavier where, as here, the sentence falls within a properly calculated GSR. See Clogston, 662 F.3d at 592-93; see also United States v. Jiménez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) (en banc) (explaining importance of advisory guidelines in the sentencing calculus). Indeed, a reviewing court may apply "a presumption of reasonableness" to a within-the-range sentence. Rita v. United States, 551 U.S. 338, 347, 351 (2007). At a bare minimum, a defendant "must adduce fairly powerful mitigating reasons and persuade us that the district court was unreasonable in balancing pros and cons." Clogston, 662 F.3d at 593 (internal quotation mark omitted).

In the case at hand, the defendant asseverates that his sentence is substantively unreasonable on two fronts. He first submits that he deserves a more lenient sentence because of his rehabilitation.[6] Second, he complains that he already has served a sentence in a Puerto Rico prison for a 2004 drug crime — a crime that he says is incident to the charged conspiracy.

The charge of substantive unreasonableness is futile.

---

[6] In support, he notes that he has finished his high-school degree, completed various workshops, maintained a record of steady employment, and secured a promise of re-employment upon release from incarceration.

The offense of conviction is serious: the defendant served as an enforcer for a thriving conspiracy that sold drugs in a protected area. The defendant's criminal history is bleak. And though his efforts at rehabilitation are laudable, the district court is in the best position to weigh the credibility of a claim of rehabilitation and to balance the sentencing scales in light of such a claim. See Gall, 552 U.S. at 51-52.

So, too, the defendant's suggestion that the sentence imposed punishes him twice for the same criminal conduct is unavailing. In support, the defendant relies on a guideline provision, USSG §5K2.23. That provision, however, states that a downward departure may be warranted if the defendant has completed a term of imprisonment for a crime incident to the offense of conviction and that crime "was the basis for an increase in the offense level for the instant offense." United States v. Kornegay, 410 F.3d 89, 99 (1st Cir. 2005) (emphasis omitted). Here, however, the Puerto Rico drug-trafficking conviction identified by the defendant was not assigned any criminal history points in the calculation of his CHC. Thus, that conviction did not serve to increase his offense level, and section 5K2.23 does not apply.

To say more would be to paint the lily. Here, the sentencing court offered a plausible rationale for the sentence imposed, and that within-the-range sentence represents a

defensible outcome. Having in mind the totality of the circumstances, we conclude that the district court did not abuse its considerable discretion in sentencing the defendant at the top of — but within — the GSR. In other words, the sentence was sufficient but not greater than necessary to achieve the legitimate goals of sentencing.

The fact that the parties jointly agreed to recommend a lower (downwardly variant) sentence does not alter this conclusion. In the absence of exceptional circumstances (such as the applicability of a statutory mandatory minimum sentence), the starting point for a court's sentencing determination is the guideline range, not the parties' recommendations. Thus, we have consistently refused to accord any decretory significance to such non-binding recommendations — or even to require a sentencing court to explain why it decided to eschew those recommendations. See Vargas-García, 794 F.3d at 167; United States v. Vega-Salgado, 769 F.3d 100, 104 (1st Cir. 2014); see also Carrasco-de-Jesús, 589 F.3d at 29.

We need go no further.[7] For the reasons elucidated

---

[7] Much of what our dissenting brother has written, including his attempt to find solace in the Supreme Court's recent decision in Molina-Martinez v. United States, No. 14-8913, slip op. (U.S. Apr. 20, 2016), has no bearing on the issues that are fairly presented by this appeal. For prudential reasons, we elect not to respond to these extraneous comments.

above, the sentence is

**<u>Affirmed</u>.**

**— Dissenting Opinion Follows —**

**LIPEZ**, <u>Circuit Judge</u>, **dissenting.** My colleagues all but acknowledge that the district court erred by relying on appellant Héctor Cortés-Medina's bare record of dismissed and acquitted charges to support a sentence nearly four years longer than the government recommended. Despite their indirect language, the message of the majority opinion is unmistakable: district courts may not factor unproven charges into their sentencing decisions without finding, by a preponderance of the evidence, that the conduct underlying those charges took place.

The majority nonetheless refuses to vacate Cortés-Medina's sentence, relying on the plain error doctrine. Their reasoning is flawed. Not only is the plain error standard inapplicable on the facts of this case, but my colleagues also fail to acknowledge that precedent from both the Supreme Court and our own court long ago established that mere allegations of criminal behavior may not be used in sentencing. Hence, the district court's error here was plain. Moreover, the majority's decision to leave Cortés-Medina's sentence intact is at odds with the spirit and message of the Supreme Court's recent decision on plain error in sentencing. See <u>Molina-Martinez</u> v. <u>United States</u>, No. 14-8913, slip op. at 11-12 (U.S. Apr. 20, 2016). Briefly stated, both the law and fairness entitle Cortés-Medina to a resentencing in which the unsubstantiated charges play no role.

# I. Standard of Review

My colleagues apply the plain error standard of review because Cortés-Medina did not object to the portion of his presentence investigation report ("PSR") listing charges against him that either were dismissed or resulted in acquittal.[8] I disagree that Cortés-Medina's challenge to the court's use of these unsubstantiated charges was unpreserved. Certainly, Cortés-Medina was not required to object to the inclusion of these charges in his PSR, as he has not argued that the arrests and subsequent proceedings did not occur. He did, however, point out in his sentencing memorandum the flimsy foundation for many of the charges.[9] Referring to his multiple indictments in state court, he noted that "many of the indictments got dismissed because of lack of proof related to the supposed direct participation of the defendant and in others there [was] no proof at all." He further stated that "many of these accusation[s] were dismissed because of insufficient evidence." Although Cortés-Medina did not repeat his objection in the argument section of his memorandum, or explicitly assert that the court should not take his dismissed and acquitted

---

[8] The reference here to "dismissed" charges also encompasses references by the district court and the majority to arrests that may not have led to formal charges.

[9] In addition to four prior convictions, Cortés-Medina's PSR lists one acquittal and multiple arrests for charges that were subsequently dismissed.

charges into account, that objection and assertion are implicit in his contentions that the charges lack support.[10]

Moreover, even if plain error review applies, Cortés-Medina would satisfy its requirements. The four elements of the

---

[10] Cortés-Medina did not object to use of his unsubstantiated criminal history after sentence was imposed, but the obligation to reiterate an argument at that point is uncertain. See United States v. Gallant, 306 F.3d 1181, 1189 (1st Cir. 2002)("[T]here is no Federal Rule of Criminal Procedure giving advance notice to counsel of a requirement to make post-sentence objections."). Indeed, we have recognized the risk that a defendant might irritate the district court by resuming argument after the sentence is imposed. Id. at 1188-89 (observing that "few trial judges would warm to a rule which requires continued argument after the court gives its sentence").

To eliminate that risk -- and thereby diminish uncertainty on appeal concerning the appropriate standard of review -- I urge our court to follow the lead of other circuits and adopt a prophylactic rule requiring sentencing judges to expressly ask the parties for objections after the sentence is announced.

The Sixth Circuit, for example, has adopted such a rule pursuant to its supervisory power over district courts within its jurisdiction. The rule directs sentencing judges,

> after pronouncing the defendant's sentence but before adjourning the sentencing hearing, to ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised. If the district court fails to provide the parties with this opportunity, they will not have forfeited their objections and thus will not be required to demonstrate plain error on appeal. . . . Providing a final opportunity for objections after the pronouncement of sentence, "will serve the dual purpose[s] of permitting the district court to correct on the spot any error it may have made and of guiding appellate review."

- 20 -

plain error test are: (1) an error that was (2) clear or obvious, which both (3) affected the defendant's substantial rights and (4) "seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  United States v. Ramos-González, 775 F.3d 483, 499 (1st Cir. 2015) (quoting United States v. Ramos-Mejía, 721 F.3d 12, 14 (1st Cir. 2013)).  As I elaborate below, the prohibition against relying on unsubstantiated allegations of culpable conduct to justify a longer sentence has long roots in precedent.  Hence, absent evidence sufficient to meet the modest

---

United States v. Bostic, 371 F.3d 865, 872 (6th Cir. 2004) (footnote omitted) (quoting United States v. Jones, 899 F.2d 1097, 1102 (11th Cir. 1990), overruled on other grounds by United States v. Morrill, 984 F.2d 1136 (1993)).  The Sixth Circuit's rule is itself derived from a similar requirement in the Eleventh Circuit. See Jones, 899 F.2d at 1102 (instructing district courts "to elicit fully articulated objections, following imposition of sentence, to the court's ultimate findings of fact and conclusions of law"); id. at 1102-03 (stating that "[c]lear articulation" from defense counsel will "tell the appellate court precisely which objections have been preserved and which have been waived, and enable the appellate court to apply the proper standard of review to those preserved").

The value of such a rule is illustrated by this case, where the requirement would have avoided, or at least minimized, the confusing jumble of standards deemed applicable by the majority: (1) plain error for the claim that the district court improperly considered acquitted and dismissed charges; (2) abuse of discretion for the claim that the court failed to adequately consider the factors set forth in 18 U.S.C. § 3553(a); (3) plain error for the claim that the court failed to provide an adequate explanation of the chosen term of imprisonment; and (4) an uncertain standard of review for the defendant's challenge to the substantive reasonableness of his sentence (leading the majority to apply abuse of discretion).

preponderance-of-the-evidence standard, a court's use of unproven charges in sentencing is error that must be characterized as "clear or obvious." Moreover, the district court invoked such charges when selecting the high end of the applicable Guidelines range, despite the Probation Office's inability to explain the underlying conduct or give reasons for the dismissals. The error was thus manifestly prejudicial. As for the miscarriage-of-justice prong, we previously have recognized that "the difference in potential jail time would be a concern in any balance." United States v. Ramos-González, 775 F.3d 483, 507 (1st Cir. 2015) (quoting United States v. Torres-Rosario, 658 F.3d 110, 117 (1st Cir. 2011)).

The Supreme Court's recent decision in Molina-Martinez further supports the conclusion that this error would satisfy what the majority describes as "not [an] appellant-friendly" standard. In Molina-Martinez, the Court rejected the Fifth Circuit's "rigid" rule that made it harder for a defendant who belatedly identifies a Guidelines error, and whose sentence is nonetheless within the correct Guidelines range, to show prejudice under the plain error standard. Molina-Martinez, No. 14-8913, slip op. at 2. While Molina-Martinez involved an incorrect Guidelines range, and the focus here is on the district court's selection of an appropriate sentence within an undisputed range, the Court's realistic assessment of the burdens of the plain error standard is equally applicable. It is not as if a more "appellant-friendly" approach

- 22 -

to plain error in sentencing would impose undue costs on the courts. As the Court in Molina-Martinez observed, "even when a Court of Appeals does decide that resentencing is appropriate, 'a remand for resentencing while not costless, does not invoke the same difficulties as a remand for retrial does,'" id. at 15 (quoting United States v. Wernick, 691 F.3d 108, 117-118 (2d Cir. 2012), and United States v. Sabillon-Umana, 772 F.3d 1328, 1334 (10th Cir. 2014) (stating that the "cost of correction is . . . small" because "[a] remand for sentencing . . . doesn't require that a defendant be released or retried").

Molina-Martinez thus rejects the misguided, court-centric obsession with the finality of sentences in favor of a practical view of the balance of interests when a court confronts the belated claim of a criminal defendant whose sentence was flawed. Given the modest impact of a resentencing on the judicial system, we should not lightly deny that remedy to a defendant whose term of incarceration appears to have been erroneously lengthened. Yet, the majority gives only glancing attention to the obvious error, and the resulting unfairness, in the sentence imposed on Cortés-Medina.[11] On the record before us, even under the plain

---

[11] Moreover, despite cautioning district courts against placing weight on a series of unproven charges, the majority elsewhere in its opinion suggests that the court's reliance on such charges in this case was acceptable. In rejecting appellant's separate argument that the court did not provide an adequate explanation for imposing a top-of-the-range sentence, my

- 23 -

error standard, Cortés-Medina should prevail on his claim of procedural error.

## II. The Plainness of the Preponderance Standard

My colleagues write that the Supreme Court "might well hold that a sentencing court may not accord any significance to a record of multiple arrests and charges without convictions unless there is adequate proof of the conduct upon which the arrests or charges were predicated."  Even as qualified, this observation -- anchored in the Supreme Court's nearly two-decades-old decision in United States v. Watts, 519 U.S. 148 (1997) (per curiam) -- effectively recognizes the long heritage of the principle that criminal charges may not play a role in sentencing without proof that the underlying conduct, in fact, occurred.  Nonetheless, the majority depicts the district court's error as not "plain" in light of dicta in our court's caselaw.

The majority is wrong in suggesting that the governing law was equivocal at the time of Cortés-Medina's sentencing.  As described below, both Watts and our own precedent make clear that the focus must be on the defendant's actual conduct, not on mere

_____

colleagues note that the court "could well have believed, even absent facts about the underlying conduct," that Cortés-Medina's "pattern of arrests and the persistent lack of follow-up" "spoke directly to the character of the individual, the risk of recidivism, and the need to protect the public from future crimes." This implicit endorsement of the district court's now-discredited reasoning further reflects the majority's inattention to fairness in this case.

allegations of criminal activity unsupported by any facts. Indeed, this is commonsense. Even a series of arrests does not prove culpability if none of the charges bore fruit and the court has no information about what triggered the arrests. Sometimes, systemic flaws lead to arrests without justification. See United States v. Zapete-Garcia, 447 F.3d 57, 61 (1st Cir. 2006) (noting that "arrest 'happens to the innocent as well as the guilty'" (quoting Michelson v. United States, 335 U.S. 469, 482 (1948)); see also, e.g., United States v. Gallardo-Ortiz, 666 F.3d 808, 815 (1st Cir. 2012) ("We have cautioned against district courts relying on mere arrests as indicative of a defendant's character . . . since a criminal charge alone does not equate with criminal guilt of the charged conduct."). Hence, a court imposing incarceration for a later crime cannot simply presume that past charges resolved without conviction, even if there were many of them, are attributable to flawed or lax prosecutorial or judicial systems rather than the defendant's innocence.

Nor was there any doubt at the time of Cortés-Medina's sentencing in December 2013 as to the standard of reliability applicable to the consideration of uncharged, dismissed or acquitted criminal activity. The need for proof by at least a preponderance of the evidence had been plainly articulated in both Supreme Court and First Circuit caselaw well before that date.

## A. The Teaching of <u>Watts</u>

In <u>Watts</u>, the Supreme Court rejected an argument that principles of due process foreclose reliance on acquitted conduct to calculate the Guidelines range, stating that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, <u>so long as that conduct has been proved by a preponderance of the evidence.</u>" 519 U.S. at 157 (emphasis added). In so stating, the Court reaffirmed its prior holding that "application of the preponderance standard at sentencing generally satisfies due process." <u>Id.</u> at 156 (citing <u>McMillan</u> v. <u>Pennsylvania</u>, 477 U.S. 79, 91-92 (1986)).

Although the focus in <u>Watts</u> was on the use of acquitted conduct to <u>set</u> the Guidelines range, the Court did not suggest that a standard less demanding than preponderance-of-the-evidence applies to the use of acquitted conduct -- or any other unproven criminal activity -- in choosing a sentence within the range.[12] To the contrary, multiple statements in the <u>Watts</u> opinions reflect an assumption that <u>any</u> facts used in sentencing -- pertaining to

---

[12] Notably, the issue debated by the majority and dissent in <u>Watts</u> was not whether a lesser standard should apply, but whether acquitted conduct should be a factor at all in calculating the Guidelines range. In his dissent, Justice Stevens conceded that the Guidelines permit the use of acquitted conduct in selecting the particular sentence within a range, but argued that acquitted conduct should be entirely excluded from consideration in setting the range. <u>See</u> 519 U.S. at 162, 166 (Stevens, J., dissenting).

allegations of past criminal conduct, or otherwise -- must be proven by a preponderance of the evidence or an even higher standard of reliability.  First, the Court quotes commentary from Guidelines § 6A1.3 stating that "it is 'appropriate' that facts relevant to sentencing be proved by a preponderance of the evidence," 519 U.S. at 156, and the majority goes on to make the observation quoted above linking the preponderance standard with the requirements of due process.  Id.[13]  In addition, as quoted above, the Court framed its holding in Watts broadly, without any suggestion that the preponderance standard applies only for the purpose of selecting the Guidelines range: a sentencing court is permitted, in general, to consider "conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."  Id. at 157.

---

[13] Section 6A1.3(a) of the Guidelines states, in part:

> In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

The commentary invoked by the Court states: "The Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case."  See 519 U.S. at 156 (citing § 6A1.3 cmt.).

Second, Justice Scalia points out that the preponderance of the evidence standard -- the measure of reliability the Court has endorsed for other sentencing facts -- is also consistent with due process for conduct underlying an acquittal. He asserts that neither the Sentencing Commission nor the courts may entirely exclude from the sentencing calculus "information which would otherwise justify enhancement of sentence or upward departure," or impose "some higher standard of probative worth than the Constitution and laws require," simply because that information "pertains to acquitted conduct." See id. at 158 (Scalia, J., concurring).[14]

Third, and consistently, the Watts Court acknowledged the possibility that, in some circumstances, the more demanding clear-and-convincing evidence standard might be appropriate. Id. at 156-57. In a lengthy footnote citing cases reflecting "a divergence of opinion among the Circuits," id. at 156, the Court quotes an Eighth Circuit case characterizing the Supreme Court's McMillan decision as approving the preponderance standard only "'for garden variety sentencing determinations,'" id. at 156 n.2 (quoting United States v. Townley, 929 F.2d 365, 369 (8th Cir. 1991)). In other words, the Court in Watts considered the

---

[14] Although Justice Scalia does not refer expressly to the preponderance standard, he implicitly accepts the lead opinion's affirmation of McMillan and the Court's long-held view that preponderance of the evidence is the constitutional baseline.

- 28 -

possibility that, at times, an assessment <u>more reliable</u> than the preponderance standard might be applicable to sentencing facts. Neither the Court nor the circuits it quoted in <u>Watts</u> contemplated the possibility of proof <u>less reliable</u> than preponderance of the evidence.  This view that <u>Watts</u> reaffirms preponderance of the evidence as the <u>minimum</u> standard of reliability is also reflected in academic literature.  <u>See</u>, <u>e.g.</u>, Claire McKusker Murray, <u>Hard Cases Make Good Law: The Intellectual History of Prior Acquittal Sentencing</u>, 84 St. John's L. Rev. 1415, 1468 (2010) ("Under <u>Watts</u>, prior acquittal sentencing is permitted but not mandated, and a hard floor of reliability is established in the form of the requirement that prior acquitted conduct be proved to a preponderance of the evidence.").

 <u>Watts</u> was thus not merely a harbinger of a reliability requirement for considering, in the majority's words, "a record of multiple arrests and charges without convictions."  Maj. Op. Rather, <u>Watts</u> applied a well-established minimum standard in a context -- a jury verdict of acquittal -- where the competing argument was that such charges should not be considered at all.

**B. First Circuit Law**

 The preponderance-of-the-evidence baseline for considering sentencing facts has also long been established in our circuit.  Indeed, two decades ago, we applied the standard in this very context, i.e., to the choice of sentence within the Guidelines

- 29 -

range where the court sought to rely on unproven criminal conduct. See United States v. Lombard, 102 F.3d 1, 4 (1st Cir. 1996) ("[T]he district court may . . . choose to give weight to the uncharged offenses in fixing the sentence within the statutory range if it finds by a preponderance of evidence that they occurred . . . ."); see also United States v. Munyenyezi, 781 F.3d 532, 544 (1st Cir. 2015) ("[A] judge can find facts for sentencing purposes by a preponderance of the evidence, so long as those facts do not affect either the statutory minimum or the statutory maximum . . . ." (citations omitted)); United States v. Fermin, 771 F.3d 71, 82 (1st Cir. 2014) ("While the jury must, of course, find facts beyond a reasonable doubt, a preponderance-of-the-evidence standard applies to the sentencing court's factual findings."); United States v. Gobbi, 471 F.3d 302, 314 (1st Cir. 2006) (stating that "acquitted conduct, if proved by a preponderance of the evidence, still may form the basis for a sentencing enhancement").

I recognize that, despite this well-established standard of reliability, we have not always used the words "preponderance of the evidence" when considering a district court's reliance on charges that did not lead to conviction. See, e.g., United States v. Flores-Machicote, 706 F.3d 16, 21 (1st Cir. 2013); United States v. Lozada-Aponte, 689 F.3d 791, 792 (1st Cir. 2012); Zapete-Garcia, 447 F.3d at 61. Nonetheless, we have applied that standard even when we have not referred to it by "name," routinely scrutinizing

- 30 -

the facts underlying the unproven criminal charges to ensure the necessary degree of reliability. See, e.g., United States v. Hinkley, 803 F.3d 85, 93 (1st Cir. 2015) (upholding court's reliance on reports of inappropriate sexual contact with minors where district court "found that it was reasonable to rely on the experience of the detective who prepared the police reports" and where "certain details reported by [a victim] made the reports 'almost self-authenticating'"); United States v. Díaz-Arroyo, 797 F.3d 125, 127, 130 n.3 (1st Cir. 2015) (noting prosecutor's explanation that charges for murder and attempted murder were dropped "only after the sole surviving witness to the incident (a minor who was able positively to identify the defendant as the shooter) was threatened and fled the jurisdiction," and that defense counsel "did not directly challenge the prosecutor's account of the circumstances surrounding the dismissal of the charges"); Flores-Machicote, 706 F.3d at 21 (noting that the district court "went to considerable lengths to walk through the defendant's prior interactions with the law . . . [and] explained, in some detail, why [it] believed the outcome of these interactions underrepresented the seriousness of the defendant's past criminal conduct"); Gallardo-Ortiz, 666 F.3d at 814-15 (noting that the district court took into account, inter alia, that numerous charges were dismissed on speedy trial grounds (i.e., not the merits), and rejecting defendant's contention that the court relied on "the

dismissed charges when concluding that he displayed a violent character"); United States v. Tabares, 951 F.2d 405, 411 (1st Cir. 1991) (noting that some charges were dismissed "not because of any finding on the merits of the case," but because the defendant was deported, and that defendant did not "deny the facts, as set forth in the presentence report, upon which these charges rested").

## C. Applying the Standard

Given the precedent described above, this should be an easy case for concluding that a remand is necessary because, as the majority concedes, the Probation Office was unable to obtain any information about the conduct underlying the unproven or acquitted charges reported in Cortés-Medina's PSR. The district court thus had no evidence that those charges in fact reflected criminal behavior. At the sentencing hearing, after listing the charges and noting the absence of explanation for the dismissals, the court merely voiced its "firm belie[f] that lightning doesn't strike twice in the same place." Presumably, the court meant to offer a different metaphor -- "where there's smoke, there's fire" -- to say that the unproven charges had substance because Cortés-Medina had other, similar criminal convictions and also admitted participating in the drug conspiracy charged in this case.

The majority concludes that this handling of Cortés-Medina's criminal history is not plain error because of what they admit is dicta in our precedent "positing that a series of arrests"

- 32 -

-- as distinguished from a single arrest -- "'might legitimately suggest a pattern of unlawful behavior even in the absence of any convictions.'" See supra (citing Lozada-Aponte, 689 F.3d at 792 (quoting Zapete-Garcia, 447 F.3d at 61)). However, as the label "dicta" reflects, the cases they cite do not support the proposition that a court may rely on multiple unproven charges in circumstances where, as here, there is no proof of the defendant's underlying conduct. In the cited cases, the courts considered evidence of the conduct. See United States v. Ocasio-Cancel, 727 F.3d 85, 91-92 (1st Cir. 2013) (indicating that the defendant's PSR contained detail on the events giving rise to the dismissed charges and noting that the defendant did not object to "any aspect" of the discussion); Lozada-Aponte, 689 F.3d at 792 (referring to "Lozada's frequent run-ins with law enforcement in Florida, Illinois, and Puerto Rico, some of which apparently involved firearms").[15] Moreover, we cannot allow incorrect, speculative dicta to override standards that are otherwise clearly articulated by the Supreme Court and our own precedent.

Cortés-Medina's PSR contains an unelaborated list of his dismissed and acquitted charges, with notations stating that "Court documents were requested but have not been received." The

---

[15] In the third case, Zapete-Garcia, the panel rejected reliance on a single arrest that occurred more than a decade earlier, speculating that it might view "a series of past arrests" differently. 447 F.3d at 60-61.

PSR states that some of the charges were dismissed for lack of probable cause, while others are simply described as "dismissed." The court thus had no basis -- let alone a preponderance of the evidence -- to find that the "smoke" represented by the unproven charges signified "fire." When additional years of incarceration are in the balance, due process requires more than metaphors. The district court thus erred -- plainly -- by relying on those charges to sentence Cortés-Medina to a longer term of imprisonment than it otherwise would have imposed.

### III. Conclusion

It has been established for decades that a district court may not rely on allegations of a defendant's past criminal activity to increase his sentence for a later crime. Instead, if the court wishes to consider that alleged conduct at sentencing, it must determine, by a preponderance of the evidence, that the prior criminal conduct occurred. This requirement applies equally to a single instance of prior criminal activity and to a series of alleged crimes. Invocation of a pattern does not eliminate the need to examine each unproven criminal charge under the preponderance of the evidence standard.

In this case, the majority concedes that no factual support was offered to substantiate the charges on which the district court relied. The Probation Office has also acknowledged that it tried, but failed, to obtain the supporting information.

Hence, on this record, defendant Cortés-Medina is entitled to resentencing without reliance on the dismissed and acquitted charges.  As the Supreme Court has now highlighted in rejecting a "rigid" approach to plain error in sentencing, "the cost of correction is . . . small,"  <u>Molina-Martinez</u>, slip op. at 15 (internal quotation marks omitted), and any concern about the burden of additional proceedings is therefore unfounded.  I respectfully dissent from my colleagues' conclusion to the contrary.